J-A14006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ERIC TOPPY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PASSAGE BIO, INC. | : | No. 12 EDA 2025 |

Appeal from the Order Entered December 13, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 200400905

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED SEPTEMBER 25, 2025**

Eric Toppy appeals from the order entered in the Philadelphia County Court of Common Pleas on December 13, 2024, in which the trial court granted Passage Bio, Inc.'s motion for entry of judgment notwithstanding the verdict ("JNOV"), entered judgment in favor of Passage Bio and against Toppy and dismissed the action with prejudice. On appeal, Toppy challenges the court's denial of his pretrial petition to enforce settlement, the court's rulings on motions in *limine*, the court's grant of JNOV in Passage Bio's favor, and the court's refusal to remove its grant of nonsuit on one of Toppy's claims. After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

We previously summarized the underlying complaint filed in this matter as follows:

> In this employment dispute, [] Toppy[] filed a five-count complaint against [] Passage Bio[] alleging that [Passage Bio] breached a settlement agreement that resolved [Toppy]'s wrongful termination claims against [Passage Bio]. …
>
> [Toppy]'s complaint alleges the following. [Passage Bio] is an emerging growth company engaged in the development of gene therapies for the treatment of rare central nervous system diseases. In April 2019, based on his prior employment in the health care industry and his relationships with rare disease patient organizations, [Passage Bio] hired [Toppy] as Vice President of Patient Engagement and Market Access. As compensation, [Passage Bio] agreed to pay [Toppy] an annual salary of $260,000 and a bonus targeted at 25% of his base salary. [Passage Bio] also granted [Toppy] 448,623 stock options which were to vest over the ensuing four years.
>
> In October 2019, while [Toppy] was on a business trip for [Passage Bio] in Europe, [Toppy]'s supervisor, Ms. Quigley, sent [Toppy] an e-mail stating that she intended to terminate his employment. On his return, [Toppy] met with [Passage Bio]'s general counsel, who told him that his employment was at an end effective October 25, 2019. Having consulted and retained counsel, [Toppy] then asserted three employment-related claims for relief against [Passage Bio]: (1) disability discrimination; (2) misrepresentation related to the forfeiture of the 448,623 stock options he had been granted; and (3) defamation related to pejorative comments that Quigley made about him to third parties.

*Toppy v. Passage Bio, Inc.*, 285 A.3d 672, 677-79 (Pa. Super. 2022) (citations omitted). Toppy and Passage Bio agreed to mediate Toppy's claims. On January 30, 2020, the mediation took place. Toppy attended with his lawyer, Harold Goodman, Esquire, and Passage Bio was represented by the company's general counsel, Edgar Cale, Esquire, and hired outside counsel,

Susan Lessack, Esquire. The parties reached agreement on two of the three settlement terms that Toppy proposed, namely payment by Passage Bio of eight months of Toppy's annual salary and a 25% bonus pro-rated for eight months. What remained unresolved was Toppy's request for 150,000 shares of stock.

Settlement negotiations continued over the weekend regarding the number of shares of stock to be issued to Toppy. On January 31, 2020, Attorney Lessack sent an email to Attorney Cale containing the terms Attorney Goodman planned to recommend to Toppy "if we have authority to offer them?" Plaintiff's Exhibit 10. Those terms were 150,000 shares, without Toppy having to purchase; 8 months of severance; mutual non-disparagement; mutual confidentiality; 8 mos. pro-rated 25% bonus; non-compete waived except for 2 companies; letter of reference and verbal reference; and Toppy's mediation fee. ***See id.***

On Monday, February 3, 2020, Attorney Cale sent an email to Bruce Goldsmith and Steve Squinto, top executives and board members of Passage Bio, laying out a specific proposal "on how to bring this matter to closure." Plaintiff's Exhibit 11, at 2. The proposal was as follows:

> 150,000 share grant, without Eric having to pay the exercise price (value of $34,500). These will be issued in a private transaction, preferably after the IPO. As reminder, our starting position was 6 mos vesting (611077 shares) and were hoping to settle at less than one year of vesting (122,155 shares). This proposal is a bit higher (27,845 shares higher) -we are giving him roughly another 3 months of vesting if you want to look at it that way.

8 mos. severance payment. Equals $173,333 one time payment.

Mutual non-disparagement (limited on our side to specific individuals, including Jill and Michelle)

Mutual confidentiality (subject to normal carveouts for people who need to know)

8 mos. pro-rated 25% bonus. Equals $43,333 one time payment. Combined with severance (above} is total of $216,666 cash payment.

Non-compete waived except for 2 companies (Axovant and Prevail)

Letter of reference and verbal reference to be consistent- letter from Steve to state generally that his role was changed and, as a result, Eric left to pursue other interests - details to be worked out.

Passage to pay Toppy's mediation fee - approximately $4000

*Id.*

On February 4, 2020, Attorney Lessack emailed Attorney Cale, stating she "spoke to [Attorney Goodman], and [Toppy] is in agreement with the terms we discussed." Plaintiff's Exhibit 13.

On February 5, 2020, Attorney Cale emailed Squinto and Goldsmith again, stating

Steve and Bruce - Eric has accepted the proposal and we are now working on papering the deal. We will need Board approval to issue him the shares, and probably need to do next week. Do you have any views on how best to socialize with the Board? We can either raise at full Board meeting (assuming we can make next Thursday's meeting a full Board meeting) or reach out individually to Board members to explain the situation and act by written consent.

*Id.* at 1-2.

We summarized the subsequent procedural history in our prior opinion in this matter as follows:

On February 12, 2020, counsel for [Passage Bio] sent [Toppy]'s counsel[, Attorney Goodman,] a draft settlement agreement and release to review. The draft accurately described the severance and bonus payments that [Toppy] would receive. The draft stated that [Passage Bio] would issue [Toppy] 150,000 shares of its Common Stock, but it added in a [] parenthesis that the number "may be adjusted by stock splits, stock combinations, recapitalizations or the like." Unbeknownst to [Toppy] at that time, [Passage Bio] already intended to authorize a pre-IPO reverse split of its common stock. [Passage Bio] was aware of this internal decision at the time of the mediation [] and on the [dates of the above email correspondence]. Despite that, [Passage Bio] never said anything to [Toppy] about the reverse stock split until more than two weeks later. On February 18, 2020, counsel for [Passage Bio] informed [Toppy]'s counsel that four days earlier (February 14, 2020), [Passage Bio]'s Board of Directors had met and authorized a 4.43316 reverse split of its common stock. No notice of that meeting was sent to [Toppy] or his counsel.

…

[Toppy] refused to sign the draft settlement agreement that [Passage Bio] sent to [Toppy]'s counsel on February 12, 2020.

In an initial public offering on February 28, 2020, [Passage Bio]'s stock opened on the NASDAQ Exchange at $18.00 per share. Based on this opening share price, the difference between the value of 150,000 shares of [Passage Bio]'s common stock and 33,836 shares is in excess of $2 million.

[Toppy] requested that [Passage Bio] comply with the terms of the agreement that [Toppy] envisioned: payment of eight months of salary, a 25% bonus pro-rated for eight months, and distribution of 150,000 shares of common stock to [Toppy]. [Passage Bio] refused. [Toppy] thereupon commenced the present action by filing a five-count complaint against [Passage Bio]. Count I alleged that [Passage Bio] breached the parties' settlement agreement and requested "enforcement in full of the parties' February 3, 2020 settlement agreement, including payment of the severance and bonus he is due, and an injunction

compelling Passage Bio to issue him 150,000 shares of its Common Stock." Counts II and III alleged claims for intentional and negligent misrepresentation against [Passage Bio] based on its failure to disclose its reverse stock split to [Toppy]. Count IV asserted a claim for unjust enrichment. Count V alleged a claim for violation of the [Wage Payment Collection Law ("WPCL")].

[Passage Bio] filed preliminary objections to the complaint in the nature of demurrers. [Passage Bio]'s sole basis for demurrer to [Toppy]'s claim for breach of the settlement agreement was that [Toppy] repudiated the settlement agreement, and thus could not enforce it, because he raised claims for intentional and negligent misrepresentation in Counts II and III of his complaint. [Passage Bio] "dispute[d] that the parties ever entered into an enforceable contract," but for purposes of its preliminary objections, it "accept[ed] as true" what it called the "factual allegation[ ]" that "an enforceable contract was formed."

[Toppy] filed a timely answer to the preliminary objections, and [Passage Bio] filed a reply brief in support of its preliminary objections.

In a November 24, 2020 memorandum and order, the trial court sustained [Passage Bio]'s preliminary objections and dismissed the complaint in its entirety.

***Toppy v. Passage Bio, Inc.***, 285 A.3d 672, 677-79 (Pa. Super. 2022) (citations omitted). On appeal to this Court, we affirmed the dismissal of Toppy's claims for unjust enrichment, fraudulent misrepresentation and negligent misrepresentation. ***See id.*** at 692. However, we reversed the dismissal of the claims for breach of the settlement agreement and violation of the WPCL, finding the complaint set forth a valid action for those claims. ***See id.*** at 687, 692. Accordingly, we reinstated Counts I and V of the complaint and remanded for further proceedings. ***See id.*** at 692.

Upon remand, a revised case management order was entered, scheduling discovery and trial. Passage Bio thereafter filed an answer to the complaint along with new matter, followed by an amended answer and new matter. Toppy filed a response to the new matter.

On May 1, 2023, Toppy filed a petition to enforce the February 3, 2020 settlement agreement with Passage Bio.

On June 7, 2023, Passage Bio filed a motion for summary judgment, or in the alternative, to dismiss under the doctrine of *forum non conveniens*.

On October 26, 2023, the trial court denied the motions above. The court thereafter issued notice of a settlement conference.

On March 18, 2024, Toppy filed multiple motions *in limine* as follows:

- Motion in Limine to Preclude Any Mention of, or Reference to, Delaware General Corporation Law
- Motion in Limine To Preclude Any Mention of, or Reference to, the Parties' February 3, 2020 Settlement Being Unenforceable Because There Were Still Certain "Material" Terms of the Agreement That Needed to be Resolved
- Motion in Limine To Preclude Defendant Passage Bio, Inc. From Introducing At Trial Evidence, Argument, Or Mention Of Its "Understanding" Of The Parties' Settlement Agreement

The next day, Passage Bio also filed its own set of motions *in limine* to preclude certain testimony, argument, and evidence as follows:

- Motion in Limine to Preclude Harold Goodman's Testimony at Trial
- Motion in Limine To Exclude Argument and Evidence Referencing or Relating to Attorney Privileged Communications
- Motion in Limine To Exclude Mediator Testimony and Evidence of Mediation Communications
- Motion in Limine to Exclude Testimony Referencing or Relating to the Termination and Alleged Discrimination Against Plaintiff at Trial

Both parties filed responses/motions opposing the other's motions *in limine*, as well as reply briefs in support of their own motions.

On April 16, 2024, the trial court entered orders denying all of Toppy's motions *in limine*. On the same day, the trial court denied some of Passage Bio's motions *in limine*. However, the court granted Passage Bio's motions *in limine* to exclude (1) mediator testimony and evidence of mediation communications, and (2) testimony referencing or relating to the termination and alleged discrimination against Toppy at trial.

Having issued rulings on the parties' motions *in limine*, the court scheduled the settlement conference for September 4, 2024. The court soon thereafter granted Toppy's request for a continuation of the trial, originally scheduled for October 2024, and directed the parties to submit bench memos outlining the legal and factual issues for trial. Both parties complied with the court's request.

Following the settlement conference, the court scheduled a jury trial for October 24, 2024, finding the matter could not be resolved other than by trial, due to its finding that Toppy's counsel "appeared without authority or who may have lacked sufficient knowledge or was unwilling to substantively and fully discuss the case" at the settlement conference. Scheduling Order, 9/6/2024.

Accordingly, the matter proceeded to a jury trial in October 2024. On October 28, 2024, the second to last day of trial, Passage Bio argued an oral

motion for nonsuit. **See** N.T., Trial, 10/28/24, at 183. Specifically, Passage Bio argued that (1) Toppy's claim was based on a written agreement, and no written agreement had been provided; (2) even if the email evidence could be construed as a written agreement between the parties, the email lacked any evidence of consideration; and (3) Delaware law controls as to the issuance of stock and proper authorization for the issuance, and the board of directors at Passage Bio never authorized the issuance of 150,000 shares to Toppy. **See id.** at 183-86. Further, relevant to the WPCL claim, Passage Bio argued there was no evidence that the amount in dispute was earned in the course of Toppy's employment, as required by the WPCL. **See id.** at 186-87.

After hearing argument from both parties, the court denied the motion as to the contract claim, but stated the issue could be revisited after the defense rested. **See id.** at 200. The court then granted the motion for nonsuit as to the WPCL claim, finding that based on the trial evidence, Toppy had forfeited his benefits based on the timing of his termination, and therefore the amounts in dispute did not constitute wages as defined under the WPCL, but rather constituted either damages or part of a settlement. **See id.** at 202, 204-05.

On October 29, 2024, the jury returned a verdict in Toppy's favor. Specifically, the jury found (1) there was a meeting of the minds between Toppy and Passage Bio on all of the essential terms of the contract, (2) Passage Bio breached that contract, and (3) Toppy reached his burden to

prove with reasonable certainty that he suffered damages as a result of that breach. Based on those findings, the jury awarded Toppy $1 million in damages on his breach of contract claim.

On November 1, 2024, Toppy filed a motion to mold the verdict and enter a final judgment against Passage Bio, asking the court to mold the verdict to reflect his legal entitlement to prejudgment interest on the jury's $1 million verdict, and to then enter final judgment.

On November 7, 2024, Passage Bio filed a response in opposition to Toppy's motion to mold the verdict. On the same day, Passage Bio filed a motion for post-trial relief, asserting "[t]he jury's verdict is wholly unsupported by the evidence presented at trial and cannot be sustained as a matter of law." *See* Motion for Post-Trial Relief, 11/7/24, at 2. Accordingly, Passage Bio requested JNOV in its favor, arguing there was no evidence to support a finding that a binding contract was formed. *See id.* at 2-3.

On November 12, 2024, Toppy filed a motion for post-trial relief, requesting the court to (1) remove the non-suit on his claim that Passage Bio violated Pennsylvania's WPCL, (2) declare Passage Bio liable for violating the WPCL, (3) entitle him to a 25% liquidated damages award under the WPCL, and (4) entitle him to a mandatory payment by Passage Bio of his attorneys' fees under the WPCL.

Both parties subsequently filed responses in opposition to each other's motions for post-trial relief, as well as reply briefs in support of their own motions.

On December 13, 2024, the trial court entered an order, and accompanying opinion, (1) granting Passage Bio, Inc.'s motion for JNOV, (2) entering judgment in favor of Passage Bio and against Toppy and dismissing the action with prejudice, (3) denying Toppy's motion for post-trial relief, and (4) denying Toppy's motion to mold the verdict as moot. This timely appeal followed.

Toppy raises the following issues on appeal:

1. Did the trial court commit reversible error in denying the Petition to Enforce the parties' settlement and failing to hold Passage Bio liable for breach of contract and its violation of Pennsylvania's Wage Payment and Collection Law?

2. Did the trial court abuse its discretion in ruling on motions in limine that prejudicially denied [] Toppy a fair trial?

3. Did the trial court commit reversible in granting JNOV?

4. Did the trial court commit an error of law by refusing to remove the nonsuit on [] Toppy's claim that Passage Bio violated Pennsylvania's Wage Payment and Collection Law?

*See* Appellant's Brief, at 11.

**Denial of Petition to Enforce Settlement**

In his first issue, Toppy contends the trial court committed reversible error in denying his petition to enforce the parties' settlement. Our standard and scope of review is well settled:

> The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision.... With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or unsupported by competent evidence in the record.

***Mastroni-Mucker v. Allstate Ins. Co.****,* 976 A.2d 510, 517-18 (Pa. Super. 2009) (citations omitted; paragraphing provided). Further, "[w]here a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement." *Id.* at 518 (citation omitted). "This is true even if the terms of the agreement are not yet formalized in writing." *Id.* (citations omitted).

Here, on October 26, 2023, the trial court entered an order denying Toppy's motion to enforce the alleged settlement, stating "there are questions of fact regarding the meaning of "150 Shares" set forth in the email dated February 3, 2020." Order, 10/26/23, at FN1.

The trial court did not err based on the record before it at that time. The court denied the motion to enforce the settlement because it found there were outstanding questions of fact to be answered that could only be determined through a fact-finder at trial. The trial court correctly ruled that the parties had an existing factual disagreement as to the shares which were a component part of the settlement agreement. As the existence of a valid settlement agreement is exactly what was being submitted at trial, we cannot say the

- 12 -

court erred in determining a more developed factual record was needed. Toppy's first claim is therefore without merit.

**Rulings on Motions in Limine**

Toppy next argues that the trial court erred in ruling on the motions *in limine*, to his prejudice. Toppy asserts the trial court was biased against him in ruling on the pre-trial motions. Toppy takes specific issue with the court granting Passage Bio's motion in limine to exclude settlement communications with Judge McInerney and precluding her testimony, and with the court's denial of his three motions *in limine*.

> In evaluating the denial … of a motion in limine*,* our standard of review is well-settled. When ruling on a trial court's decision to grant or deny a motion in limine*,* we apply an evidentiary abuse of discretion standard of review. A trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. If the evidentiary question is purely one of law, our review is plenary.

*Commonwealth v. Belani*, 101 A.3d 1156, 1160 (Pa. Super. 2014) (citations and quotation marks omitted).

First, Toppy argues the trial court erred in granting Passage Bio's motion in limine to exclude mediator testimony and evidence of mediation communications. In this motion, Passage Bio asserted that Toppy was expressly prohibited from presenting such evidence at trial pursuant the parties' mediation agreement, as well as pursuant to the mediation privilege mandated by 42 Pa.C.S.A. § 5949.

- 13 -

The party asserting privilege bears the burden of producing facts establishing proper invocation of the privilege. Once the invoking party has made the appropriate proffer, then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies.

*Carlino East Brandywine, L.P. v. Brandywine Village Associates*, 260 A.3d 179, 197 (Pa. Super. 2021) (citations and quotation marks omitted).

Toppy first contends Passage Bio waived it right to invoke the mediation privilege. Specifically, Toppy explains he attached to his complaint a February 3, 2020 email from the judge who acted as mediator in this matter to Toppy's counsel, confirming the parties' settlement. *See* Appellant's Brief, at 45. Toppy states Passage Bio never moved to strike the use of that email over the four years between the filing of the complaint and the filing of Passage Bio's motion in limine just prior to trial. *See id.*

Passage Bio responds that it "did not waive invocation of the statutory provision through its pleading, discovery, or motion practice." Appellee's Brief, at 63. Specifically, Passage Bio asserts "[t]he statutory provision at issue is an evidentiary rule" and therefore "does not implicate an affirmative defense or a pleading." *Id.* at 64. Accordingly, Passage Bio clarifies that while a discovery privilege protects a party from being compelled to produce communications in discovery, invocation of 42 Pa.C.S.A. § 5949, as an evidentiary rule, is not dependent on the way the parties handled communications in discovery or in motion practice. We agree.

Toppy has not explained how responding to his assertions somehow effectuated a waiver of the privilege on behalf of Passage Bio. The only cases we can find in which waiver of the mediation privilege has been found are district court cases in which the responding party inadvertently disclosed the privileged documents themselves, and failed to take steps to rectify the disclosure. **See, e.g.**, **Stewart Title Guaranty Co. v. Owlett & Lewis, P.C.**, 297 F.R.D. 232 (M.D. Pa. 2013).

It is clear from the record that Passage Bio did not move into the record the mediation communications at issue. To the contrary, the challenged communications were introduced by Toppy. We can find no barrier to Passage Bio invoking the mediation privilege to preclude disclosure of certain communications *at trial*, despite referencing those communications during discovery after Toppy presented them to the court.

Even if the privilege were not waived, Toppy argues the settlement communications with the mediator should have been admitted based on two exceptions to the mediation privilege. Section 5949(b) sets forth several exceptions to the general rule, one of which provides a settlement document may be introduced in an action where its enforceability is at issue. **See** 42 Pa.C.S.A. § 5949(b)(1); and one of which provides the privilege does not apply to a fraudulent communication that is relevant evidence in an action to enforce a mediated agreement. **See** 42 Pa.C.S.A. § 5949(b)(3).

The exception contained in Section 5949(b)(1) permits the disclosure of "settlement documents" only in the limited circumstance where the enforceability of the document is at issue. *See* 42 Pa.C.S.A. § 5949(b)(1). Relevantly, this section specifically defines a "settlement document" as a "written agreement signed by the parties to the agreement." *See id.* § 5949(c). As the entire issue submitted to the jury at trial was whether or not a settlement existed in the first place, and there certainly was no signed written document, we cannot find the first exception applies here.

Further, Toppy's claims related to fraud were previously dismissed by the trial court, and this Court upheld the dismissal. Accordingly, we cannot find Toppy has met the third exception.

Finally, Toppy challenges the trial court's decision to preclude the mediator from testifying at trial based on the mediation agreement signed by the parties.

Prior to mediation, the parties signed a mediation agreement that included the following provision:

IV. Disqualification of Mediator and Exclusion of Liability.

**Each party agrees to make no attempt to compel the mediator's or any JAMS employee's testimony**. Each party agrees to make no attempt to compel the mediator or any JAMS employee to produce any document provided or created by JAMS or the mediator or provided by the other party to the mediator or to JAMS. The parties agree to defend the mediator and JAMS from any subpoenas from outside parties arising out of this Agreement or mediation. **Should JAMS or the mediator be required to respond to a subpoena from any party involved in this mediation, that party will be billed for time and expenses**

> **incurred in connection with such a response**. The parties agree that neither the mediator nor JAMS is a necessary party in any arbitral or judicial proceeding relating to the mediation or to the subject matter of the mediation. Neither JAMS nor its employees or agents, including the mediator, shall be liable to any party for any act or omission in connection with any mediation conducted under this Agreement.

Passage Bio's Memorandum of law in Support of its Motion in Limine to Exclude Mediator Testimony and Evidence of Mediation Communications, 3/25/24, at Exhibit A (emphasis added).

Toppy reads the second emphasized portion to carve out a provision under which the mediator could be subpoenaed to testify at trial so long as the subpoenaing party was billed for time and expenses incurred. Toppy has misread the above provision.

That sentence clearly states that a party shall be responsible for the mediators' time and expenses incurred in "responding" to a subpoena. Nothing in the provision provides that the mediator may thereafter be permitted to testify. Conversely, the provision states unequivocally that "[e]ach party agrees to make no attempt to compel the mediator's [] testimony." *Id.* There is no exception provided for this prohibition. While Toppy cites to numerous cases in which mediators have testified, he does not assert whether mediation agreements existed in any of those cases, and more importantly, whether mediation agreements prohibiting a mediator's testimony, existed in those cases.

As we do not find there was a waiver of the mediation privilege and do not find Toppy has met any of the exceptions to the privilege, we find the trial court did not err in granting the motion in limine to exclude mediation communications. Further, as we agree with the trial court that Toppy was precluded from calling the mediator to testify at trial pursuant to the clear terms of the parties' signed mediation agreement, we find the court did not err in granting the motion as to the mediator testimony.

Next, Toppy argues the court erred in denying his motion in limine to preclude Passage Bio from referencing its undisclosed "understanding" of the parties' settlement agreement. The trial court denied the motion, again finding it was "in essence, an effort to revisit his previous Motion to Enforce Settlement Agreement," which was denied because of a factual dispute. Order, 4/17/24, at FN1. Accordingly, the court found that "[p]recluding the parties from suggesting an ambiguity or a failure to reach a meeting of the minds is contrary to the court's ruling that Plaintiff had not demonstrated that terms that would render the settlement enforceable." *Id.* While Passage Bio's one-sided "understanding" of the agreement may not have ultimately been determinative of whether a contract existed, it could have been relevant to get a full picture of the process of settlement negotiations. Therefore, we cannot say the court erred in determining that the admissibility of parol evidence was a matter to determine at trial.

Next, Toppy argues the court erred in denying Toppy's motion in limine to preclude any mention of the settlement being unenforceable since there were still certain "material" terms that needed to be resolved. The trial court denied the motion, finding it, too, was "in essence, an effort to revisit his previous Motion to Enforce Settlement Agreement," which was denied because of a factual dispute. Order, 4/17/24, at FN1. The court stated it was not willing to "determine, as a matter of fact, that the evidence argued demonstrates a 'meeting of the minds' on the part of the parties." ***Id.***

We cannot say the trial court erred based on the record before it at the time. The issue that was being presented to determine through trial was whether or not an enforceable agreement existed. Accordingly, whether or not there were "material" terms that needed to be resolved was a relevant defense for Passage Bio. The trial court did not err in determining those factual determinations needed to be developed and resolved at trial. This claim is without merit.

Finally, Toppy contends the court erred in denying his motion in limine to preclude any mention by Passage Bio about Delaware's General Corporation Law. The trial court denied the motion, stating "[i]t would be premature for this court to rule that the law governing corporate actions in the Defendant's state of incorporation is wholly irrelevant or inadmissible in advance of trial, *although the manner in which such law pertains to this dispute will be determined by the evidence at trial*." Order, 4/17/24, at FN1.

Again, the trial court did not err based on the record before it at that time and the unresolved factual issues. The court denied the motion because it found the record in front of it was insufficient to decide such a question at that time. The court specifically reserved a full decision on the matter for after relevant evidence was presented at trial. Accordingly, Appellant still had every right to contend at trial which jurisdiction and applicable law applied to the issues in this case. The trial court did not err in determining that a more developed evidentiary record was needed. Toppy's final challenge to the court's ruling on motions *in limine* is therefore without merit.

## Granting JNOV and Dismissing Action with Prejudice

In his next issue, Toppy contends the trial court erred by granting Passage Bio's motion for JNOV, thereby dismissing the action with prejudice.

We note, "[t]he entry of a judgment notwithstanding the verdict is a drastic remedy. A court cannot lightly ignore the findings of a duly selected jury." ***A.Y. v. Janssen Pharmaceuticals, Inc.***, 224 A.3d 1, 12 (Pa. Super. 2019) (citations and ellipses omitted).

> There are two bases upon which a court may enter [JNOV]: (1) the movant is entitled to judgment as a matter of law, or (2), the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse[ly] to the movant, the law nonetheless requires a verdict in [his] favor; whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

* * * *

We have held that in reviewing a motion for [JNOV], the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a court should only enter [JNOV] in a clear case and must resolve any doubts in favor of the verdict winner. A trial court's grant or denial of a [JNOV] will be disturbed only for an abuse of discretion or an error of law. In examining this determination, [the appellate court's] scope of review is plenary, as it is with any review of questions of law.

Further, the weight and credibility of the evidence presented at trial is for the jury to determine and we will not substitute our judgment for that of the jurors.

*Ferris v. Harkins*, 940 A.2d 388, 389-99 (Pa. Super. 2007) (citations omitted) (vacated in part on other grounds).

Here, the jury unanimously found that there was a meeting of the minds on all essential terms of a contract and that based on that meeting of the minds, Passage Bio breached the contract. As damages, the jury awarded Toppy $1 million.

Passage Bio subsequently filed a motion for post-trial relief requesting judgment NOV in its favor. In asking for relief, Passage Bio argued "[t]he jury's verdict is wholly unsupported by the evidence presented at trial and cannot be sustained *as a matter of law*." Motion for Post-Trial Relief, 11/7/24, at 2 (emphasis added). In support of this claim, Passage Bio argued that in "several critical respects … there was no evidence to support a finding that a binding contract was formed." *Id.* Those reasons were as follows: (1) The evidence failed, *as a matter of law*, to demonstrate that there was

- 21 -

consideration, (2) The evidence failed *as a matter of law*, to demonstrate that there was a written agreement containing all essential terms between the parties, and (3) Passage Bio's Board of Directors never approved the issuance of 150,000 shares to Toppy. ***See id.*** at 2-3.

The trial court supported its decision to grant JNOV and dismiss this action as follows:

> Because the court must conclude that the verdict was infected by the impermissible conduct of counsel and [Toppy] never met the burden of proving that written agreement he claimed at the outset of trial, did not prove all the elements for an enforceable contract (and did not even seek a jury finding that there was consideration), and did not prove damages with the requisite specificity, the court must enter Judgment NOV in favor of the Defendant.

Trial Court Opinion, 12/13/24, at 18 (footnote omitted).

First, Toppy asserts the trial court departed from its duty to be impartial and adhere to the standard of review for a JNOV, arguing several specific reasons for such contention. We unfortunately agree to a certain extent.

Preliminarily, we note that many of the points raised by the trial court in support of its grant of JNOV were raised *sua sponte*; i.e. Passage Bio did not raise these points in its motion for post-trial relief, nor at trial for that matter. As we cited in our prior opinion in this matter, this Court has held that trial courts should not dismiss actions based on grounds not raised by the parties. ***See MacGregor v. Mediq Inc.***, 576 A.2d 1123, 1127-28 (Pa. Super. 1990) (trial court erred by sustaining preliminary objections and dismissing complaint by *sua sponte* raising immunity issue that defendant did not raise).

Despite this Court's reminder, the trial court appears to have done the same thing again. This time, Toppy has rightfully objected to such an action here.

Nowhere in the motion for JNOV did Passage Bio challenge the verdict based on the actions of Toppy's counsel. Notably, the conduct of Toppy's counsel had not once been called into question prior to the trial court's December 13, 2024, opinion. Further, Passage Bio has not challenged the verdict based on lack of proof of the value of damages. Passage Bio has simply not challenged the verdict as "speculative", nor have they questioned a lack of expert testimony to support the jury's verdict.

We further note that while the trial court's opinion is extensive, spanning 22 pages, there is not one citation to its standards of review, any supporting case law, or any applicable statutes. Much of the court's reasoning, accordingly, tends to give the appearance of advocacy rather than an impartial review. Relevantly, Passage Bio's request for JNOV was based on the first basis for relief—that they are entitled to judgment as a matter of law. It seems obvious that review of such a claim would be expected to entail actual citations to our case law.

However, giving the trial court all benefit of the doubt, we find some of its reasons aligned with Passage Bio's request for relief. Namely, the court agreed with Passage Bio that Toppy failed to show the jury a written document that demonstrated the parties were in agreement as to the terms of a contract, and that Toppy introduced no evidence that consideration existed.

Toppy argues the trial court's conclusions could only be supported by construing the evidence in Passage Bio's favor, which is not the proper standard of review.

In order to establish a cause of action for breach of contract in Pennsylvania, a plaintiff must show "(1) the existence of a contract, including its essential terms[;] (2) a breach of a duty imposed by the contract[;] and (3) resultant damages." **Pennsy Supply Inc. v. American Ash Recycling Corp.,** 895 A.2d 595, 600 (Pa. Super. 2006) (citation omitted). Here, only the first factor has been called into question – whether a contract existed.

We reiterate our law surrounding the enforceability of a settlement agreement from our prior opinion in this matter:

> Like any contract, to be enforceable, a settlement agreement must possess all the elements of a valid contract: offer, acceptance, and consideration. It is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject matter, of the agreement. An alleged acceptance of an offer is not unconditional and, therefore, is not an 'acceptance' if it materially alters the terms of the offer. As such, a reply which purports to accept an offer, but instead changes the terms of the offer, is not an acceptance, but, rather, is a counter-offer, which has the effect of terminating the original offer. When the evidence is in conflict as to whether the parties intended that a particular writing should constitute an enforceable contract, it is a question of fact whether a contract exists.
>
> Of significance, if the parties have agreed on the essential terms, the contract is enforceable even though it is an informal memorandum requiring future approval or negotiations of incidental terms. Indeed, courts also will enforce informal agreements that are missing "material" terms so long as the parties agree on the essential terms.

***Toppy***, 285 A.3d at 682 (citations, brackets, and quotation marks omitted).

Further,

> When there exists conflicting evidence as to whether the parties intended that a particular writing would constitute a complete expression of their agreement, the parties' intent is a question to be resolved by the finder of fact[.] We will not reverse such finding unless it is unsupported by the evidence, or unless the fact finder has clearly abused its discretion or committed an error of law. In reviewing such finding, we are mindful that it is understandable that when, after a prolonged period of negotiations, parties appear to reach agreement on the essential terms of an important transaction, one of them might believe that a contract had been made. However, before preliminary negotiations ripen into contractual obligations, there must be manifested mutual assent to the terms of a bargain.
>
> If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced. If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce, such an agreement must be set aside.

***Commerce Bank/Pennsylvania v. First Union National Bank***, 911 A.2d 133, 145 (Pa. Super. 2006) (citations omitted).

Here, the trial court, albeit briefly, provided the following as one of its reasons for granting JNOV:

> The court further notes that [Toppy] presented the case as a "written contract" case, and not based on the court's exercise of equitable powers. As such, it was necessary for [Toppy] to point to a writing that contained all the terms necessary to prove a contract and the existence of unambiguous terms to support the relief requested. At no time did [Toppy] show the jury a document that demonstrated that both parties were in lockstep as to the contract [Toppy] claimed had been breached—i.e. that [Passage Bio] had failed to issue him 150,000 post-split shares and had agreed to the terms governing such shares and when and how those shares would be transferred and become negotiable instruments.

Trial Court Opinion, 12/13/24, at 15.

Toppy responds that viewing the evidence in his favor, as the verdict winner, the documents submitted to the jury, as supported by Attorney Cale's testimony, "unequivocally support the jury's finding 'there was a meeting of the minds … on all essential terms of the contract.'" Appellant's Brief, at 73 (citation omitted).

The documents Toppy refers to are the previously mentioned internal emails between the company's general counsel, Attorney Cale, hired outside counsel, Attorney Lessack, and Passage Bio officials, from January 31, 2020, February 3, 2020, February 4, 2020, and February 5, 2020. Toppy contends these emails combined establish that he was "in lock step" with Passage Bio as to an enforceable contract. We cannot agree.

These emails do not suffice as evidence that both Toppy and Passage Bio were fully in agreement on all material terms. Neither Toppy, nor his counsel, were even included in any of those emails. Without any emails personally from Toppy or his counsel, there is simply no evidence about Toppy's intent to be bound by these informal discussions. Rather, the emails do show that counsel for Passage Bio wanted to provide Toppy with a "proposal", and that further details and written agreements were consistently contemplated by Passage Bio in order to come to a final and binding settlement agreement between the parties.

Finally, the court also found that Toppy failed to present any evidence that he provided consideration to Passage Bio. Toppy contends that viewing the evidence in his favor, the evidence at trial proved Passage Bio received consideration from Toppy in two forms: (1) his agreement to release Passage Bio from the prelitigation employment claims he raised, and (2) his agreement not to work for several competitors of Passage Bio. **See** Appellant's Brief, at 77-78.

However, these forms of consideration are not shown by the written documents entered into evidence. While Toppy relied on the email exchanges between Passage Bio officials and their own counsel to prove a contract existed, those emails do not include the consideration asserted by Toppy.

Without consideration, the evidence cannot support the jury's finding that a meeting of the minds on all essential terms of a contract existed based on the emails submitted by Toppy. Accordingly, we cannot say the trial court erred in granting JNOV, for this reason alone.

While we urge the trial court to be more careful in properly responding to such a motion in the future, we find its decision is ultimately supported by the record and our law. Toppy is due no relief on this claim.

## Refusing to Remove Nonsuit on WPCL claim

In his final issue, Toppy argues the trial court erred in granting, and then refusing to remove, the nonsuit on his WPCL claim.

This Court will reverse an order denying a motion to remove a nonsuit only if the trial court abused its discretion or made an error of law.

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

We note that granting a non-suit is proper when, having viewed all the evidence in the plaintiff's favor, the elements of the cause of action have not been established.

*International Association of Theatrical Stage Employees, Local Union No. 3 v. Mid-Atlantic Promotions, Inc.*, 856 A.2d 102, 104 (Pa. Super. 2004) (citations and quotation marks omitted).

The WPCL was enacted to provide employees a means of enforcing payment of wages and compensation withheld by an employer. Generally, the underlying purpose of the WPCL is to remove some of the obstacles employees face in litigation by providing them with a statutory remedy when an employer breaches its contractual obligation to pay wages. In essence, the primary goal of the WPCL is to make whole again, employees whose wages were wrongfully withheld by their employers.

*Ely v. Susquehanna Aquacultures, Inc.*, 130 A.3d 6, 13 (Pa. Super. 2015) (citations and quotation marks omitted).

Here, at the close of Toppy's case, but prior to presenting their case, Passage Bio argued an oral motion for nonsuit. *See* N.T., Trial, 10/28/24, at 183. Relevant to the WPCL claim, Passage Bio argued there was no evidence that the amount in dispute was earned in the course of Toppy's employment, as required by the WPCL. *See id.* at 186-87. The trial court granted nonsuit

as to the WPCL claim, concluding the amount in dispute did not constitute "wages" under the WPCL, stating:

> the amounts that were part of the settlement agreement or disagreement were not based upon amounts owing and due under the terms of employment because the plaintiff had been terminated and therefore had forfeited those rights as wages and payments. They could constitute damages, but they don't equate with under the act and under Pennsylvania law wages that are subject to the [WPCL].

*Id.* at 202.

> The WPCL defines "wages" as follows:
>
> "Wages." Includes all earnings of an employe, regardless of whether determined on time, task, piece, commission or other method of calculation. The term "wages" also includes **fringe benefits or wage supplements** whether payable by the employer from his funds or from amounts withheld from the employes' pay by the employer.

43 P.S. § 260.2a (emphasis added). That section further defines "fringe benefits or wage supplements" to include:

> all monetary employer payments to provide benefits under any employe benefit plan, as defined in section 3(3) of the Employee Retirement Income Security Act of 1974,[] **as well as separation**, vacation, holiday, or guaranteed pay; reimbursement for expenses; union dues withheld from the employes' pay by the employer; **and any other amount to be paid pursuant to an agreement to the employe**, a third party or fund for the benefit of employes.

*Id.* (internal citation omitted; emphasis added).

Toppy relies on the bolded portions above to support his argument that he is entitled to the shares he claims because Passage Bio agreed to give him those shares as part of a settlement, and because he was granted stock

options when he was hired by Passage Bio and, he asserts, Passage Bio agreed to issue Toppy the 150,000 shares in exchange for the original stock option.

Toppy contends the damages he claims he is owed constitute wages within the meaning of the statute, as it has been found to include "severance pay and other separation related contractual arrangements." Appellant's Brief, at 81 (citing *Shaer v. Orthopaedic Surgeons of Cent. Pennsylvania, Ltd.*, 938 A.2d 457, 465 (Pa. Super. 2007)).

In *Shaer*, the plaintiff was employed pursuant to a contract that required the employer to provide the employee ninety days of salary and benefits upon notice of termination. *See Shaer*, 938 A.2d at 458–61. The plaintiff filed suit under the WPCL when the employer terminated and failed to provide the ninety days' salary and benefits. The trial court rejected the claim, reasoning it was a claim for unearned wages. *See id.* at 464. This Court reversed, holding the employee could recover the severance pay under the WPCL. "Although a number of WPCL cases are either federal, trial level, or unpublished, and, therefore, not controlling, there seems to be consensus among them that severance pay and other separation related contractual arrangements are indeed covered by the WPCL." *Id.* at 465. The Court relied on an unpublished memorandum from the Eastern District of Pennsylvania for the proposition that contractual separation pay is recoverable under the WPCL because separation pay is distinct from "potential lost future earnings, which are not covered by the WPCL." *Id.* at 465 (citation omitted). Further, the

*Shaer* Court relied on the incorporation of separation pay in the statutory definition of fringe benefits and wage supplements. *See id.*

Based on *Shaer,* Toppy argues this Court should hold that payments agreed to in a post-termination settlement agreement are recoverable under the WPCL. *Shaer* does not support Toppy's argument. *Shaer* held that recovery under the WPCL is proper where an employer breaches an employment contract by failing to honor a provision of the employment contract that required notice before termination.

While Toppy argues his employment contract provided for his right to the shares at issue, the record belies this assertion. The record evidence shows that, while Toppy was offered 450,000 shares in his employment contract, vesting of those shares was subject to specific conditions. Importantly, that amount was to vest in varying amounts over a certain number of years, with the first target being at one year of employment. Notably, Toppy was terminated at only six months of employment. Accordingly, pursuant to the clear employment terms, no shares had vested at the time Toppy was terminated.

Any shares Passage Bio may have offered after Toppy's termination were therefore not contractually obligated based on the original employment contract. Further, unlike in *Shaer*, the benefit was not offered in exchange for Toppy's service. *See Shaer*, 938 A.2d at 465. Rather, they were part of

settlement negotiations in exchange for Toppy releasing Passage Bio from claims related to his termination.

Based upon the above, we find the trial court properly denied Toppy's motion to remove the non-suit, because the damages sought simply do not constitute "wages" as defined under the WPCL.

As we find none of Toppy's issues merit relief, we affirm the order appealed from.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/25/2025